277 So.2d 898

**Charles Edward Lee TELL**

v.

**The STATE of Alabama.**

**SC 316.**

Supreme Court of Alabama.

May 10, 1973.

Thomas Seay, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

FAULKNER, Justice.

The defendant-appellant, Tell, was convicted for the offense of rape by a Circuit Court jury in Jefferson County. His punishment was fixed at death. After his conviction and sentence he filed a motion for new trial. The trial court overruled the motion. The defendant appeals from the order.

The motion for new trial contained numerous grounds. In brief the defendant argues that the death sentence is cruel and inhuman; that the court erred in refusing written requested charges Numbers 2 and 6, which are set out hereinbelow.

Charge Number 2 appearing on page 6 of the transcript is:

"The Court charges you, ladies and gentlemen of the jury, that if the jury, upon considering all the testimony, have a reasonable doubt about Charles Tell's guilt arising out of any part of that evidence you should find Charles Tell not guilty."

The word "Refused" and the letters "J. J. J." follow the requested charge.

Charge Number 6 appearing on the same page of the transcript is:

"The Court charges the jury that if they believe from the evidence that the conduct of the prosecutrix * * * was such toward the defendant at the time of the alleged rape as to create in the mind of the defendant, the honest and reasonable belief that she had consented or was willing for the defendant to have connection with her, they must acquit the defendant."

The word "Refused" and the letters "J. J. J." appear below the requested charge.

This is the second time the defendant has appealed to this Court. He was previously tried and convicted by a jury of the offense of rape of this prosecutrix and his punishment was fixed at death. On appeal his conviction and sentence were reversed by this Court because evidence of a stolen automobile may have influenced the minds of the jury and prejudiced him. Tell v. State, 285 Ala. 234, 231 So.2d 107 (1970).

The facts adduced at the trial of this case are so depressingly wretched that they send shock waves through the mind of a moral, normal person.

The facts pertinent to this case are as follows:

The prosecutrix testified that she worked in a doctor's office in 1968; that on the night of April 16, 1968, at approximately 11:00 P.M., she drove her car to the residence of her baby-sitter in Birmingham to get her three-year-old son. Her attendance at a night school was the reason for her leaving her child with a "sitter". She noticed that she was being followed by an automobile. It parked across the street when she drove into the driveway of the sitter. When she returned to her car she saw the defendant under a flood light at the end of the driveway. When she attempted to open the door of her car, the defendant pointed the barrel of a gun at her head and ordered her to get in her automobile. He got under the steering wheel and drove it to a place near the Farmers' Market on Finley Avenue. While driving along the street he robbed her of $7.00, which was all the money she had. When the defendant parked he ordered her onto the back seat and to undress. She pleaded with him to leave her and the child alone and to not harm them. She was having her monthly period. Her plea went unheeded. When she was completely nude, and with the gun at her head, the defendant raped her. When he was finished he ordered her to dress and get in the front seat. He drove to a second place, parked, ordered her to undress again, and raped her a second time. The

gun this time, as well as the first, was the "friendly persuasion". He then began to ask her questions about her age, her name, where she worked, and whether she had a boyfriend. She was requested by the defendant to write her address and telephone number on a piece of paper. She complied. During the conversation, and with the gun at her head, he asked her if she was going to tell. Being a very sensible woman she answered "No". He then ordered her to straddle his lap and raped her again. This time, for additional amusement and satisfaction, he struck matches for light to observe. He then ordered her to kiss him. She did. He ordered her to kiss his penis. She did. She gagged, and choked, and sat up. He raped her again—four times during the time he was with her. He told her he had her name and address and would come back to get her if she told the police. After this despicable ordeal, and after wiping her blood from the steering wheel, he returned her and the child to the driveway of the baby-sitter where he got into his car and drove away. She drove to her apartment, put her child to bed, and reported the crime to a pharmacist friend of hers. The time was around 2:00 A.M. She reported to another friend at 6:30 A.M., who reported the crime to the police.

The prosecutrix had been too frightened to call the police. About twenty minutes after she returned to her apartment defendant called her on the phone to inquire as to whether she was going to tell anyone. She told him "No". He called again on the day of April 17, and on April 18. The police traced the calls and made the arrest at his place of employment on April 18, 1968. He had tried to flee upon learning the police were seeking him.

The defendant did not testify in the first trial, but in the second trial he testified in his own behalf, admitting that he had been convicted of the crimes of assault with intent to ravish, burglary, and grand larceny.

He testified that he met the prosecutrix at 7th Avenue and 20th Street, Birming-ham, one day in February, 1968. He was coming from the Frank Nelson Building headed toward City Hall to pay a fine. When he reached 7th Avenue after walking up 20th Street, he saw the prosecutrix in a parked car on 7th Avenue. She was alone. She beckoned him to come to the car. She told him to come back there when he finished his business at City Hall. He stayed at City Hall thirty minutes and then returned to the parked automobile of the prosecutrix and they talked. This time there was a child on the front seat with the prosecutrix. She asked him to get in the car. He did—on the back seat—and she drove to a place behind Pollock Paper Company on the Southside—28th Street, South and 7th Avenue. She parked the car there and they talked. The time was 10:00 to 10:30 A.M. when they began their conversation. They stayed there about 30 minutes. He had to be at work at 11:00 A.M. at the Magic City Produce Company. She returned to downtown and let him out of her car at 5th Avenue, North and 20th Street. He testified that he and the prosecutrix met again about two weeks later at 18th Street and 20th Avenue. He called her, as she had given him her telephone number at their first meeting. She picked him up and they drove to a lovers' lane at Sayreton behind ACIPCO. He testified that she called him a week later; also that he and prosecutrix went out together four times. They engaged in the sex act twice each time they went out, with her consent. He testified that she had asked him for $50.00 and to leave the city with her. He could not leave because he had a wife and two children. On cross-examination by the State the defendant testified that the prosecutrix told him she worked at Dales Cellar Restaurant when they first met, and that they last met on Wednesday, April 17; that they went to the same place they had been and engaged in the sex act twice; that the child was with her; that the time was about 11:30 or 11:45 P.M.; that he talked to the prosecutrix Thursday morning and Thursday night; that he was arrested by the police on April 18.

The death penalty for rape has been set aside as a form of punishment in this State by this Court. Swain v. State, 290 Ala. 123, 274 So.2d 305 (1973), on authority of Swain v. Alabama, 408 U.S. 936, 92 S.Ct. 2860, 33 L.Ed.2d 753 (1972).

The next question to be answered and decided is whether there was error in refusing the requested charges.

Title 7, § 273, Code of Alabama 1940, Recompiled 1958, provides that, "The refusal of a charge, though a correct statement of the law, shall not be cause for a reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of parties."

We are of the opinion that requested charges Number 2 and Number 6, set out in full supra, were adequately covered in the court's oral charge and charge Number 4 given at the request of the defendant.

The remaining issue in this case is the disposition of the defendant in view of the abolition of the death sentence. In Swain v. State, 290 Ala. 123, 274 So.2d 305 (1973), a majority of this Court held that the death sentence would be reduced to life imprisonment in the State penitentiary without sending the case back to the lower court for sentencing. While the writer of this opinion dissented in *Swain*, certainty pertaining to procedure is demanded, and therefore Swain is followed in this case. We therefore hold that the sentence of death of the defendant is reduced to imprisonment in the State penitentiary for the rest of his natural life.

We find no error in the record

Modified and affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD, and MADDOX, JJ., concur.