282 So.2d 107

**James Vernon CORK**

v.

**STATE.**

**6 Div. 260.**

Court of Criminal Appeals of Alabama.

Aug. 14, 1973.

Rogers, Howard, Redden & Mills, and Robert M. Harper, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and J. Knox Argo, Sp. Asst. Atty. Gen., for the State.

PER CURIAM.

The appellant was tried and convicted of murder in the first degree in the Circuit Court of Jefferson County, and his punishment fixed at death.

The short statement of facts set out in the brief of appellant, and accepted by the State as substantially correct, is hereby adopted for the purpose of this opinion and is herein set out as follows:

On June 10, 1970, Birmingham Police Officer O. W. Steadman, received a call to go to an address on Albany Street in the Wylam Section of Birmingham. He received the call at approximately 12:45 P.M. Upon arriving at the defendant's house at 753 Albany Street, Officer Steadman walked up onto the porch of the house where defendant was sitting. He asked the defendant, "What happened?" and the defendant replied, "I done it to her before she done it to me." The Officer then looked inside the house where he noticed the body of the defendant's wife lying on the kitchen floor. A shotgun was found in one of the bedrooms of the house. An expended shotgun hull was found on the living room floor. The deceased had a wound in her head which appeared to be caused from a gunshot. The appellant was arrested at that time.

One of the Cork's neighbors, Jo Hardin, testified that she had heard the defendant and his wife arguing during the morning hours prior to this shooting.

Evidence was presented by the State as to prior threats by appellant against his wife.

The defendant took the stand and testified in his own behalf. Defendant stated that he and his wife had been arguing during the course of the morning, mainly over money matters. The argument culminated in his wife pointing a shotgun at the defendant and threatening him. The couple scuffled over the gun and it discharged, fatally wounding Mrs. Cork. The defendant denied making threats against his wife.

The State offered the testimony of Kathy Beam, a daughter of the deceased, who testified as to certain threats she had heard appellant make to her mother against her life. On cross-examination the witness testified in substance that she had never told the prosecuting attorney, or anyone connected with the prosecution, about these threats until after the commencement of the trial of appellant in February 1971, although she had been in the court house with relatives several times since her moth-

er's death on June 10, 1970, and apparently had opportunity to apprise the prosecutor of this testimony. Then on redirect examination the State elicited testimony from the witness, over objection of appellant, that she had kept a diary in which she had recorded some of the threats.

Appellant argues that the admission of this evidence with reference to the diary was error as contravening the well known rule that the testimony of a witness may not be bolstered, or corroborated by showing previous statements of the witness to the same effect. In addition to the authority cited by appellant, many cases are collected supporting this rule in Alabama Digest, Volume 19A, Witnesses, ☞414(2).

■ However, where a charge, imputation, or inference of falsity may arise from the circumstances surrounding the witness's statement or statements, then proof of similar statements made by the witness is admissible as going to the credibility of the witness and to rebut the inference. Aaron v. State, 273 Ala. 337, 139 So.2d 309; Yarbrough v. State, 105 Ala. 43, 16 So. 758.

■ We think the long silence of the witness, brought out on cross examination, before apprising the prosecuting attorney of this information at the time of the actual trial may have given grounds for such an inference, above referred to, and made this testimony admissible under the exception to the general rule. Aaron v. State, supra; Yarbrough v. State, supra. No error appears in the ruling of the court in this respect.

Appellant contends that the court erred in inquiring of counsel for both sides in the presence of the jury whether both would consent to have the shotgun, which had been admitted into evidence, tested by the State Toxicologist who was present as a witness in court. Counsel for appellant neither agreed nor disagreed to the court's question or proposal. Counsel for the State made known that it would be agreeable with the prosecution.

Before this occurrence appellant had asked Detective Painter, a State's witness, while cross-examining him, the following question and received the answer as shown by the record:

"Mr. Howard: And since it has been suggested, if somebody should happen to choose to do it, [examination of the shotgun] they could do it to tonight, I guess, couldn't they?

"Witness: I don't know how soon they could do it. It could be done.

"Mr. McDonald (for the State): We will be happy to turn it over to the toxicologist over the weekend and let him report on it."

The argument of the appellant was that he was placed in an untenable position in the presence of the jury by the question from the court and that as a result thereof the substantial rights of the appellant were prejudiced. In support of this argument he cites and relies mainly on the case of Kissic v. State, 266 Ala. 71, 94 So.2d 202. In that case the trial court, after both sides had rested in the trial at hand, made the following observation in the presence of the jury:

"The Court: According to the testimony everyone else that was in that room has testified except Mr. Harper and if either side of you want me to do it, I will call him as my witness because I want to get the whole thing in, if you want it. In other words, you all have investigated and whether you want him or not, I don't know. It doesn't matter to me, but if you want him I would be glad to call him as my witness. Now you don't have to say anything at all if you don't want to. If you do want him, make your motion. If you don't don't say anything if you don't want to." This statement was held to be reversible error as in contravention of the rule in this State that no unfavorable inference can be drawn and that no unfavorable argument to the jury made because of the failure to call a witness to testify, when

that witness is accessible to both parties and can be examined by both parties. The court further observed that, "It would seem that a comment by the trial judge from which such an inference could be drawn would also constitute reversible error."

It seems to us that the rationale in Kissic v. State, supra, should not apply to the facts in this case.

In the case of Lang v. State, 279 Ala. 169, 182 So.2d 899, the court stated: "It cannot be seriously contended that every expression of opinion by the court, during the progress of a trial, if erroneous, should furnish grounds for reversal. But such opinion must, in some manner, influence the result of the cause . . . . ."

■ As shown above, it appears that this matter was first suggested by the appellant on cross-examination of Detective Painter and further there was no question but that the deceased died from a shotgun wound caused by a shot from the particular shotgun in question, which had been admitted into evidence, and incidentally identified by the appellant. We do not see how a ballistic test of the spent shotgun shell, found in the home of the appellant near the door leading to the kitchen where the body of the deceased was found, could affect the ultimate fact that the deceased was killed by a shot fired from the gun. Even though, the State contends the gun was fired intentionally and the appellant contends that it was fired accidentally, the fact still remains that the deceased came to her death from a shot fired from this gun. We see no injury to the substantial rights of the appellant by the action of the court in propounding this question. The better course would have been to excuse the jury before making the remarks, but even if error, we do not think it reversible. Supreme Court Rule 45.

■ Officer Steadman of the Birmingham Police force went to the home of appellant in response to a radio call from the police department. On arrival he walked up on the front porch and observed appellant sitting in a chair. The officer immediately asked if appellant had called the police and the appellant replied he had not and was then asked if his wife had called. The response to this question was that she was in the back of the house. At this time the officer looked through the front door towards the kitchen in the rear of the house, saw someone lying on the floor and immediately asked "What happened?". The appellant immediately responded, "I done it to her before she done it to me", or words to that effect. At the time of this occurrence the appellant was not in custody and had not been accused nor does it appear that the officer had any information given to him as to appellant's connection with a crime, other than that given to him by appellant. (The officer was endeavoring to find out the purpose of the police call.)

"In Miranda, supra, the Court defines custodial interrogation as follows:

'. . . . . By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . . . . [T]here can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves.' " Wilkerson v. State, 50 Ala.App. 150, 277 So.2d 423.

It, therefore, appears that it was a spontaneous statement made before the appellant was in custody, suspected of the crime of murder, or restrained of his freedom in any manner and that it was not necessary that he be given the Miranda warnings or rights. It further appears that this statement or confession by the appellant is not the subject of challenge as to its admissibility into evidence.

However, subsequent to this statement made to Officer Steadman, the homicide detectives were called to the scene and he was questioned by one or more of them. The appellant complains that though he was given the so called Miranda warning that it did not comply in full with the requirement laid down by the Supreme Court in that he was not advised that he was entitled to have a lawyer present during interrogation if he so desired. In response to the questioning of the homicide detectives, it appears from the evidence that the appellant made a second statement substantially as follows: "The only thing I want to tell you is I shot her before she had a chance to shoot me." This statement was admitted into evidence over the objection of appellant.

It appears to us that the substance and meaning of the statement made to Officer Steadman and the second statement made to the homicide detectives is the same. We, therefore, fail to see that any injury or prejudice to the appellant's rights resulted from the second statement, since the jury had the benefit of the first one.

It further appears that there was other evidence to establish the corpus delicti and to corroborate the admission of the second statement when it was offered into evidence at the trial.

We think the case of Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L. Ed.2d 1 (1972) in which the court held that where there is one confession by a defendant properly admitted into evidence and there was strong corroborative evidence of the guilt of the defendant, the admission of another confession even though it should have been excluded upon objection, was harmless error, is apt here. Under the authority of this case, we hold that the admission of the second confession subsequent to the voluntary confession of appellant, made to Officer Steadman, was error without injury to the substantial rights of appellant and not of a reversible nature.

The appellant further contends that the record does not show that the trial court made a finding in respect to the voluntariness of the statement made by appellant to Detective Painter, above referred to.

We recognize the law set out in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, that before a confession may be admitted into evidence over objection and submitted to a jury, it is incumbent upon the trial judge to make a finding of its voluntariness.

We further recognize the law set out in Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593, that the record must indicate a determination of such voluntariness before it can be used as evidence. However, we do not understand Sims to hold that the court must make a written finding of this fact but it is enough if the court indicates his findings on this matter and that it is reflected in the record. In the case at bar, the court did indicate its ruling on this matter over the objection of appellant by its actions and statements. We find no error in this respect.

At the conclusion of the State's testimony the appellant moved to exclude the evidence, which motion was overruled by the court. After verdict appellant also filed a motion for a new trial which motion was also overruled by the court.

The court gave 33 written charges requested by appellant and refused 24. The refusal of two charges assigned as error on the part of the court are as follows:

Charge number 20

"The court charges the jury that if a witness has come upon the stand, and testified to a different state of facts here to what the witness testified upon the preliminary trial of the defendant, you have the right to look at this evidence as evidence tending to impeach the witness who has made such conflicting statements."

Charge number 24

"If any witness testifying has been impeached, then the jury may disregard his testimony, unless his testimony be corroborated by other testimony."

 It is the rule that in criminal cases tendered written instructions should be hypothesized on the belief from the evidence and a refusal of instructions in a criminal case not so hypothesized is not error. Shouse v. State, 36 Ala.App. 614, 63 So.2d 722; Slaughter v. State, 47 Ala. App. 634, 259 So.2d 840, cert. denied, 288 Ala. 751, 259 So.2d 845; Bush v. State, 211 Ala. 1, 100 So. 312. (See innumerable cases in Alabama Digest, Volume 7, ☞814 (3).) Neither of these charges meets the required rule and the court cannot be put in error for their refusal.

 It further appears under the facts developed in the case at bar that these charges were not based upon actual testimony which would be further reason for their refusal.

 The court has carefully considered the remainder of the refused charges set out in the record and also in the motion for a new trial. The principles of law incorporated in these charges, where correctly stated, were either covered by the given requested charges or the excellent oral charge of the trial court. Therefore, there was no error in their refusal. Code of Alabama, 1940, Recompiled 1958, Title 7, Section 273.

 In view of the abolition of the death sentence at this time, it is the duty of this court to make disposition of the defendant under the law as set out in Swain v. State, 290 Ala. 123, 274 So.2d 305; Tell v. State, 291 Ala. 86, 277 So.2d 898; Jones v. State, 50 Ala.App. 174, 277 So.2d 920. In accordance with the rule set out in the above authorities, the sentence of death is vacated and set aside and a sentence of imprisonment in the State penitentiary for the term of his natural life is hereby imposed upon appellant. The clerk of this court shall furnish a certified copy of this order to the clerk of Jefferson County Circuit Court and the clerk of that court shall issue a commitment in this case based upon this sentence of life imprisonment and shall forward this commitment to the Board of Corrections.

Except as to the death sentence, the judgment of the circuit court is affirmed. As to the death sentence, the judgment is hereby modified and reduced to life imprisonment.

The record in this case consists of 799 pages and this court in compliance with its duty has endeavored to examine it for error. The part of the transcript reflecting the taking of testimony in the presence of the jury and out of the presence of the jury is replete with bickering by counsel for each side, and what appears to be unnecessary argument with each other and the court all contributing to this record of undue proportions. It further appears that the court displayed great patience and endeavored to its utmost to afford a fair trial from the viewpoint of both the prosecution and the defense. In our search of the record we have found no error of a substantial nature affecting the rights of the appellant and the case is due to be affirmed.

The judgment below is modified and as modified is hereby affirmed.

Modified and affirmed.

All the Judges concur except DeCARLO, J., who recuses self.