The appellant was convicted of second degree murder for the killing of his wife by "running a motor vehicle into, on or against" her. Sentence was fixed at ten years' imprisonment.
 I
Initially the appellant contends that the trial court erroneously added the words "the jury finds" to the written verdict of the jury. The record shows that this was done with the express consent of defense counsel. Therefore any objection was specifically and knowingly waived. Furthermore, the jury endorsed the indictment twice. The finding and verdict as endorsed on the front of the indictment is correct and proper in all respects. For these reasons the argument of the appellant is without merit and lacks any factual foundation.
 II
Alabama State Trooper G.E. Gravly testified that he assisted the investigating officer at the scene of the homicide and that "we made all the measurements ourselves." Although he was holding the "beginning of the tape" and "Trooper Kelley was reading the tape off", Gravly was allowed to testify, over the objection of defense counsel, that Trooper Kelley stated when they were making the measurement that it was two hundred and twenty-two feet from the spot the vehicle left the road to the point where the body was found. Trooper Gravly also stated that he had taken measurements "several times" in the past and that in his experience investigating accidents "it was measured correctly and measured properly."
Trooper Kelley had previously testified without objection that it was one hundred and three feet and two inches from the point the appellant's vehicle left the road until the point of impact; that the skid marks were eighteen feet long; and that the appellant told him he was traveling approximately thirty miles an hour when he struck his wife. This was consistent with Kelley's investigation. All the evidence, except the statements given by the appellant, indicated that the deceased was approximately a foot and one-half to two feet off the white line on the side of the road when struck. The appellant's vehicle did not begin to skid until after the automobile had made contact with the deceased.
What Trooper Kelley told Trooper Gravly at the scene of the homicide about the distance involved was hearsay even though Gravly assisted in making the actual measurement. C. Gamble,McElroy's Alabama Evidence, § 242.01 (1) (3rd ed. 1977). However the distance between the initial point where the vehicle left the road and the point where the deceased's body landed after impact was not material to any question before the jury. This fact was not disputed and the weight of evidence indicated that the appellant was traveling thirty miles an hour.[1]
During the trial no issue was made as to how far the deceased was thrown upon impact. There was no actual dispute as to the speed of the automobile. In conclusion, though the admission of Gravly's statement was error we fail to see how it could possibly have injured the appellant. While the distance could have been material — in showing the speed of the automobile — this matter was not in dispute. The record on appeal must not only show error, but that such error probably injuriously affected some substantial right of the appellant. Mosley v.State, 241 Ala. 132, 1 So.2d 593 (1941); Rule 45, Alabama Rules of Appellate Procedure.
 III
Finally, the appellant maintains that his conviction is due to be reversed because *Page 1147 
nowhere in the transcript does it show what specific "rights" the appellant was informed of before he confessed.
The appellant made five statements at the scene of the homicide and two at the State Trooper Office in Montgomery. In all but one of the statements he admitted hitting his wife with his automobile but maintained that it was an accident and unintentional. It does not appear that the appellant was informed of any of his constitutional rights at the scene of the homicide.
1. The appellant admitted to Hershell Mason, a passing motorist who stopped to render aid, that he had hit his wife who had been walking down the side of the road. The appellant asked Mason to help him get his wife in the car but did not mention the hospital or being run off the road by a blue pickup truck. There was no objection to the admission of this testimony.
2. When State Trooper W.L. Kelley asked the appellant "what happened" the appellant stated that his wife had been driving and had been slung out of the car when they hit a tree after being run off the road by a blue pickup truck. Defense counsel objected to this testimony by stating "objection".
3. After Trooper Kelley had talked to a few of the people on the scene he returned to the appellant and asked him if he had been driving. The appellant then told him that he had been driving the automobile. The appellant "said that a pickup truck had run him off the road and he had hit his wife; that she had been walking". The appellant stated that his wife had taken him to Jackson Lake where he fished all night and she had returned that morning to pick him up. This testimony was elicited by defense counsel on cross examination of Trooper Kelley.
4. The appellant told Officer Cody Wood of the Montgomery Police Department, who was trying to find out what happened, that "he and his wife had been down to Lake Jackson fishing that night" and "that she had gotten mad with him and had left walking". The appellant then picked her up in his automobile on Highway 143. They argued further and his wife had gotten mad again and had gotten out of the car and started walking. The appellant then proceeded up the highway and ran over her with his automobile. Officer Wood did not ask any more questions and the defendant did not mention the blue pickup truck. Before talking to the appellant, the only thing Officer Wood learned from Trooper Kelley was "the identify of the lady and of the subject (appellant) sitting in his car."
5. The appellant told State Trooper Curtis Luther that he had been fishing all night and his wife had come to pick him up. When the appellant wanted to fish another thirty minutes his wife said that she would be walking home and for the appellant to stop and pick her up. A blue pickup truck "hugging" the center line forced the appellant "over a little bit too close" and he hit his wife. The appellant stated that he was traveling approximately thirty miles per hour and though he got right to the edge of the pavement he never did get on the dirt shoulder of the road.
When Luther arrived on the scene, Trooper Kelley told him that there was "something funny about the accident" but did not tell him what had happened. Trooper Luther testified on cross examination by defense counsel that at the time he questioned the appellant he "didn't know he was a suspect". Luther did not read the appellant "any rights" before questioning him "(b)ecause at that time as far as I knew it was just a traffic accident." Trooper Luther started making notes of his questions and the appellant's answers when the appellant made a statement which conflicted with a previous one.[2] No one instructed *Page 1148 
Trooper Luther to question the appellant. After questioning the appellant, Trooper Luther "carried" him to the Hooper Street Apartments in Montgomery.
When the prosecutor asked Trooper Luther to recite what the appellant told him defense counsel stated his objection without assigning any ground. Before Luther read his notes to the jury defense counsel requested to be allowed to "see it before he reads it". No further objection was made and when the notes were offered in evidence defense counsel stated "no objection."
At the Trooper Office the appellant made two statements.
6. On the afternoon of the day of the homicide, Sunday, May 29, 1977, Trooper Kelley took the appellant's statement at the State Trooper Office. Though the record shows that Kelley read the appellant his Miranda rights prior to taking the statement, there is no indication of which specific rights were given. Kelley stated that the appellant was not on the "hot seat," that three troopers were present during the interview and that he did not argue with the appellant but just asked him for his statement. The appellant "freely came of his own free will to the office to make a statement".
Basically the appellant told Kelly on this occasion that his wife had come to pick him up from fishing and that, not wanting to wait on him, she had started walking back from Jackson Lake. The appellant had been run off the road by a blue pickup truck and had hit his wife unintentionally in an attempt to avoid the truck. His wife was walking on the pavement, "barely on the edge of the pavement". The appellant denied having an argument with his wife before leaving the boat landing. He stated that he "hit" his brakes just about the same time or before he hit his wife. He denied wanting to kill her.
7. On May 31, 1977, the appellant gave Kelley a second statement at the Trooper Office. The appellant wrote the statement in longhand "at the Trooper Office out in the parking lot on the hood" of Trooper Kelley's car. The appellant stated that he began to slow down and move off the road to pick up his wife and also to give the truck room to pass when the next thing he knew his car had hit his wife from behind. He stopped immediately to help her. The appellant stated that he did not realize that his car ran off the pavement.
The statement given by the appellant to Mr. Mason was properly admitted without objection. The requirement that a suspect be advised of his rights is not applicable to noncustodial questioning by private citizens. United States v.Maddox, 492 F.2d 104 (5th Cir. 1974); Ellis v. State,338 So.2d 428 (Ala.Cr.App. 1976); Bedingfield v. State, 47 Ala. App. 677,260 So.2d 408 (1972).
The statements given to the three law enforcement officers at the scene of the homicide were properly admitted into evidence because it does not appear that the appellant was in custody and the questioning was investigative rather than accusative.Barfield v. Alabama, 552 F.2d 1114 (5th Cir. 1977); UnitedStates v. Marzett, 526 F.2d 277 (5th Cir. 1976); United Statesv. Lacy, 446 F.2d 511 (1971); Truex v. State, 282 Ala. 191,210 So.2d 424 (1968). Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), does not prevent traditional investigatory functions such as general on-the-scene questioning. Harrison v. State, 358 So.2d 759 (Ala.Cr.App.), reversed on other grounds, 358 So.2d 763 (Ala. 1977). See alsoMcBride v. State, 355 So.2d 750 (Ala.Cr.App. 1978); Favors v.State, 355 So.2d 103 (Ala.Cr.App.), cert. denied, 355 So.2d 107
(Ala. 1977).
 "Miranda, supra, does not prevent traditional investigatory functions such as general on-the-scene questioning, but it does become operative where restraint of an individual by law enforcement *Page 1149 
personnel is `significant'. United States v. Montos, 421 F.2d 215 (5th Cir. 1970), cert. denied 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532. The dividing line between general investigation and custodial interrogation is not drawn with precise demarcation, but is determined on a case-by-case factual analysis. Brown v. Beto, 468 F.2d 1284 (5th Cir. 1972). Criteria used to determine the necessity of Miranda
safeguards include: probable cause to arrest, subjective intent of the police, subjective belief of the defendant, and focus of the investigation. Montos, supra. Especially important is whether the focus of the investigation had finally been centered on the accused. Brown, supra; DeGruy v. State, 56 Ala. App. 521, 323 So.2d 406 (1975) cert. denied 295 Ala. 399, 323 So.2d 411." Harrison, 358 So.2d at 761.
* * * * * *
 "Our decision in Miranda set forth rules of police procedure applicable to `custodial interrogation'. `By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' 384 U.S., at 444, 86 S.Ct., at 1612."
* * * * * *
 "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him `in custody'. It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited." Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 713-714, 50 L.Ed.2d 714 (1977) (emphasis added).
See also Sims v. State, 51 Ala. App. 183, 191, 283 So.2d 635
(1973).
Evaluating the present case in light of the above principles we find that the appellant was not in custody when he made the statements to the investigating officers in the course of the officers' general investigation of an automobile accident involving a homicide. 31 A.L.R.3d 565 (1970).
The questioning at the scene of the homicide was not "inherently intimidating", 31 A.L.R.3d at 577, and was not aimed at gathering evidence for a criminal prosecution. The officers, acting independently, were only conducting a general investigation at the scene of an apparent accident involving a homicide in which the appellant was the only witness. While the officers may have had a bare suspicion that an unlawful
homicide had been committed, it does not appear that the appellant was placed under arrest after the questioning or deprived of his freedom in any significant way. Under these circumstances the Miranda warnings were not required.
We need not determine whether the two statements given by the appellant at the Troopers' Office were made in an atmosphere of "custodial interrogation" and in that "sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited". Mathiason, 97 S.Ct. at 714.[3] The substance of these two *Page 1150 
statements was already properly before the jury in the five statements the appellant had made at the scene of the homicide. Thus even if their admission was error because of the failure of the prosecutor to lay the proper predicate the error was harmless. Where there is one confession by a defendant properly admitted into evidence and there was strong corroborative evidence of the guilt of the defendant, the admission of another confession, even though it should have been excluded upon objection, is harmless error. Milton v. Wainwright,407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Klemmer v. State,51 Ala. App. 383, 286 So.2d 58, cert. denied, 291 Ala. 786,286 So.2d 62 (1973); Cork v. State, 50 Ala. App. 670, 282 So.2d 107
(1973); Myers v. State, 40 Ala. App. 617, 119 So.2d 602 (1960);Minirth v. State, 40 Ala. App. 527, 117 So.2d 355, cert. denied,270 Ala. 228, 117 So.2d 360 (1960).
We have searched the record and found no error prejudicial to the appellant. The judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.
[1] The only evidence that would tend to contradict this was Trooper Kelley's statement that he "wouldn't say it would be at all" consistent with thirty miles an hour to be able to stop an automobile in eighteen feet of skid marks. Kelley further stated that he could not determine how far it would take an automobile traveling thirty miles an hour to stop.
[2] Trooper Luther testified:
 "And at the time that he stated that she had walked all the way from Lake Jackson it conflicted with a statement he made about her getting out of the car. And at that time I started recording (making notes) the questions and his answers to them."
[3] If these two statements were given in an atmosphere of custodial interrogation they should not have been admitted because the Assistant District Attorney did not show (1) the precise and specific warnings given the accused, Swicegood v.State, 50 Ala. App. 105, 277 So.2d 380 (1973); also Davis v.State, 331 So.2d 807 (Ala.Cr.App. 1976); Lloyd v. State,45 Ala. App. 178, 227 So.2d 809 (1969), and (2) that the confession was voluntary and not improperly adduced. Lewis v. State,57 Ala. App. 545, 329 So.2d 596, affirmed, 295 Ala. 350,329 So.2d 599 (1976).