686 So.2d 528 (1996)
STATE
v.
Marvin Ray JUDE.
CR-95-0359.
Court of Criminal Appeals of Alabama.
April 19, 1996.
On Application for Rehearing June 21, 1996.
*530 Jeff Sessions, Atty. Gen., and Joseph Marston III, Asst. Atty. Gen., for Appellant.
Bruce Gardner, Huntsville, for Appellee.
PATTERSON, Judge.
Marvin Ray Jude was indicted in Madison County on September 1, 1995, for the unlawful breaking and entering of a vehicle in violation of § 13A-8-11 of the Code of Alabama 1975. On November 13, 1995, the circuit court granted Jude's motion to suppress a statement obtained from Jude by Detective Michael Edward Shaneyfelt on June 6, 1995, at the City of Madison police station without the warnings of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The state appeals the order granting the motion to suppress the statement. This appeal concerns only one issue: Whether the circumstances under which Jude gave his statement amounted to "custody" for the purposes of requiring Miranda warnings.
The evidence presented at the suppression hearing was as follows: On June 3, 1995, an automobile was broken into in the parking lot of the Cracker Barrel restaurant located at 120 Cleghorn Boulevard, Madison, Alabama. Jude, an employee at the restaurant, met the description of a person identified as having been seen near the automobile near the time of the crime. An officer obtained Jude's name and address. On June 6, 1995, at 9:00 a.m., Detective Shaneyfelt went to Jude's residence and asked Jude if he would accompany Shaneyfelt to the police station so that Shaneyfelt could ask him about the case. Jude agreed to accompany Shaneyfelt, and the two proceeded in Shaneyfelt's car to the police station. During the course of the interview at the police station, Jude confessed to the crime. Detective Shaneyfelt did not at any time before the interview advise Jude of his Miranda rights. The trial court ruled in the subsequent suppression hearing that the failure to advise Jude of his Miranda rights was improper, and it granted Jude's motion to suppress his confession.
"[A] trial court's ruling based upon conflicting evidence given at a suppression hearing is binding on this Court, and is not to be reversed absent a clear abuse of discretion." Jackson v. State, 589 So.2d 781, 784 (Ala.Cr.App.1991) (citations omitted). "`A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based his decision.'" Dowdy v. Gilbert Engineering Co., 372 So.2d 11, 12 (Ala.1979) (quoting Premium Service Corp. v. Sperry & Hutchinson, Co., 511 F.2d 225 (9th Cir. 1975)).
"The question of whether a suspect has been subjected to custodial interrogation requiring Miranda warnings is `not an easy one,' and the trial court's findings on conflicting evidence must be given great weight. Harris v. State, 376 So.2d 773, 776 (Ala.Cr.App.), cert. denied, 376 So.2d 778 (Ala.1979). `The trial judge's finding of admissibility "will not be disturbed on appeal unless it is evident that the determination was palpably contrary to the weight of the evidence."' Watkins v. State, 497 So.2d 1153, 1154 (Ala.Cr.App. 1986) (quoting Ex parte Singleton, 465 So.2d 443, 445 (Ala.1985)). The determination of the admissibility of the defendant's confession was within the sound discretion of the trial court, which was in the best position to determine the credibility of the voir dire witnesses by observing their testimony and demeanor. See Lindsey v. State, 456 So.2d 383, 389 (Ala.Cr.App. 1983), aff'd, 456 So.2d 393 (Ala.1984), cert. denied, 470 U.S. 1023, 105 S.Ct. 1384, 84 L.Ed.2d 403 (1985). This determination will not be disturbed on appeal if supported by a preponderance of the evidence. Lindsey; 1 LaFave & Israel, [Criminal Procedure,] at section 10.4(b)."
Finch v. State, 518 So.2d 864, 871 (Ala.Cr. App.1987).
In this case the trial court heard only the testimony of Detective Shaneyfelt and Jude at the suppression hearing. The facts elicited *531 from these do not conflict, with one exception: what Shaneyfelt said to Jude on the doorstep of Jude's house immediately before Jude accompanied Shaneyfelt to the police station. On direct examination Shaneyfelt testified:
"Q: Now, tell me about when you went out to pick him up. Did you tell him why you were picking him up, [to] talk to him?
"A: Yes, sir.
"Q: Well, what did you tell him?
"A: I first presented my credentials to Mr. Jude. I identified myself as a detective with the Madison Police Department. I told him that I was currently investigating a break-in into a car that occurred at the Cracker Barrel restaurant ... on June 3, 1995. I asked Mr. Jude would he be willing to go to the police department with me so that he and I could sit down and discuss the case. He agreed with me. He was very cooperative.
". . . .
"Q: Now, let me step back a second. Why were you wanting to interview Mr. Jude?
"A: Mr. Jude was an employee who worked in the kitchen area there at the Cracker Barrel and who was also present on the date that the incident occurred on June 3rd.
". . . .
"Q: Did you at anytime place him under arrest for this crime?
"A: No, sir.
"Q: Did you place him under arrest for any crime?
"A: No, sir."
On cross-examination Shaneyfelt testified:
"Q: Without question, at that time [when Shaneyfelt went to Jude's residence] he was a suspect. I mean, you wanted to talk to him to find out what he knew about this incident; is that correct?
"A: Yes, sir.
"Q: In fact, he was the only one that you had any information on about this at all; is that correct?
"A: Yes, sir.
". . . .
"Q: Who answered the door?
"A: Mr. Jude did.
"Q: Was anybody else present?
"A: I don't recall, sir.
"Q: Did you identify yourself as a police officer?
"A: Yes, sir.
"Q: You told Mr. Jude that you were an investigator with the City of Madison?
"A: Yes, sir.
"Q: Did you tell him at the scene there that you wanted to talk to him about an alleged car burglary that occurred on June 3?
"A: Yes, sir.
"Q: Did you tell him that you wanted to take him down to your office and ask him some questions about that?
"A: Yes, sir, I asked him would he be willing to go to the police department to my office. Again, he was very cooperative. He said, `Yes, sir.'
"Q: Did you tell him at that time, Detective Shaneyfelt, that he had a right to refuse to go with you?
"A: I don't recall if I did or not, sir.
"Q: Did you tell him he was not under arrest?
"A: I think I did, yes, sir.
"Q: What exactly did you say about that?
"A: If I recall, I stated to him that I had no warrants and that he was not under arrest, that I just wanted to talk to him about the case.
"Q: Did you tell him he was free to leave?
"A: I don't know if I ever told him that, no, sir.
"Q: In any event, your testimony is he voluntarily went with you?
"A: Yes, sir.
"Q: And you took him to the police department; is that correct?
"A: Yes, sir, to my office."
Jude then took the stand and testified on direct examination:
"Q: Do you recall Detective Shaneyfelt coming to your residence on June 6, 1995?
"A: Yes, sir.

*532 "Q: Do you recall what he said to you when he came to your residence?
"A: Yes.
"Q: What did he say?
"A: He wanted to take me down to the department and talk to me about an incident that happened at the Cracker Barrel.
"Q: And what did you say?
"A: I said, `Okay'.
"Q: At that point you said you would go with him?
"A: Yes.
"Q: Did you feel like you had the right not to go?
"A: Well, not really. I didn't have no other choice.
"Q: Did he tell you you had the right to refuse to go?
"A: No, sir, he didn't.
"Q: Did he tell you that you were free to leave at any point?
"A: No, sir.
". . . .
"Q: Did he ever tell you that you were not under arrest?
"A: No, he didn't."
On cross-examination Jude testified:
"Q: Now, Mr. Jude, you are saying that you felt like you were under arrest. You have been under arrest before, though, right?
"A: Yes, sir.
"Q: How many occasions, do you know?
"A: A number of them.
"Q: A number of times, right?
"A: Yes.
"Q: Several times?
"A: Yes.
"Q: When you were placed under arrest before, did the officer put handcuffs on you?
"A: Yes.
"Q: Did they always advise you that you had the right to remain silent?
"A: No.
"Q: Has anyone ever told you that?
"A: Told me what?
"Q: When you were under arrest that you had the right to remain silent. You didn't have to talk?
"A: Yes.
"Q: You have been told that before?
"A: Yes.
"Q: When they arrested you before, did they tell you what you were under arrest for?
"A: Yes.
"Q: Did they say, `You're under arrest'?
"A: Yes.
"Q: Did they have you put your hands behind your back when they cuffed you?
"A: In some cases.
"Q: In some cases?
"A: Yes.
"Q: Did Investigator Shaneyfelt do any of that to you on the 6th?
"A: No, he didn't.
"Q: He never told you that you were under arrest, did he?
"A: No.
"Q: He never said, `I've got a warrant for you,' did he?
"A: No."
The testimony reveals that, although Mr. Jude may have subjectively felt that he was under arrest, he was never actually placed under formal arrest and he was not in custody at the time of his confession. Miranda warnings are not required unless the suspect has been arrested or is in custody.
"`Miranda warnings are not necessarily required to be given to everyone whom the police question. Oregon v. Mathiason, 429 U.S. 492 [493-95], 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977). Miranda is only applicable when an individual is subjected to custodial interrogation. Davis v. Allsbrooks, 778 F.2d 168, 170 (4th Cir.1985); Primm v. State, 473 So.2d 1149, 1158 (Ala. Crim.App.), cert. denied, 473 So.2d 1149 (Ala.1985). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant *533 way." Miranda, supra, 384 U.S. at 444, 86 S.Ct. at 1612.
"`There is a distinction which must be made between general interrogation and custodial interrogation since Miranda is inapplicable when interrogation is merely investigative rather than accusative. Kelley v. State, 366 So.2d 1145, 1148 (Ala. Crim.App.1979); Primm, supra, at 1158; Johnston v. State, 455 So.2d 152, 156 (Ala. Crim.App.) cert. denied, 455 So.2d 152 (Ala.1984). This distinction should be made on a case-by-case basis after examining all of the surrounding circumstances. United States v. Miller, 587 F.Supp. 1296, 1299 (W.D.Pa.1984); Johnston, supra, at 156; Warrick v. State, 460 So.2d 320, 323 (Ala.Crim.App.1984); Hall v. State, 399 So.2d 348, 351-52 (Ala.Crim.App.1981); Kelley, supra at 1149.
"`The United States Supreme Court in California v. Beheler, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) articulated "the standard by which `custody' is to be judged." Davis, supra at 171. In its opinion, the Supreme Court stated that "although the circumstances of each case must certainly influence a determination of whether a suspect is `in custody' for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, supra, 463 U.S. at 1125, 103 S.Ct. at 3519-20 (quoting Mathiason, supra, 429 U.S. at 495, 97 S.Ct. at 714). See also Primm, supra, at 1158.
"`A determination of "custody" is not based on "the subjective evaluation of the situation by the defendant or the police officers." Davis, supra at 171. Where there has not been a formal arrest (as here), an objective test is used to determine whether the suspect's freedom of action has been restricted by the police in any significant manner. Davis, supra at 171; Miller, supra at 1299; Warrick, supra at 322; Hall, supra at 351. "The only relevant inquiry is how a reasonable man in the suspect's position would have understood his position." United States v. Jonas, 786 F.2d 1019, 1022 (11th Cir.1986) (quoting Berkemer v. McCarty, 468 U.S. 420 [442-44], 104 S.Ct. 3138, 3152, 82 L.Ed.2d 317 (1984))."
Smolder v. State, 671 So.2d 757 (Ala.Cr.App. 1995) (quoting Hooks v. State, 534 So.2d 329, 347-48 (Ala.Cr.App.1987).
"In order to decide if a suspect is `in custody,' the court, looking at the totality of the circumstances, must find that a reasonable person in the accused's position would believe that he or she is not free to leave. Landreth [v. State], 600 So.2d [440,] 444 [(Ala.Cr.App.1992)].
"`In deciding whether the questioning of a suspect is "custodial" the following factors should be considered:
"`"whether the suspect was questioned in familiar or neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint of the suspect, the duration and character of the questioning, how the suspect got to the place of questioning, the language used to summon the suspect, the extent to which the suspect is confronted with evidence of guilt, and the degree of pressure applied to detain the suspect.'"
600 So.2d at 444, quoting P.S. v. State, 565 So.2d 1209, 1214 (Ala.Cr.App.1990)."
Johnson v. State, 673 So.2d 796 (Ala.Cr.App. 1995).
In this case the trial court ruled that Jude was in custody and that he should have been read his Miranda rights. The factual setting in this case is almost identical to that in Smolder v. State, supra, in which this court held that the suspect was not in custody at the time of his interrogation. In both cases the suspects were taken to the police station by a policeman; in both cases the questioning took place at the police station; in Smolder there were at least two policemen in the room during questioning while in this case only Detective Shaneyfelt was present; in both cases the suspects were not physically restrained; in both cases the questioning was for only a brief period; in both cases direct accusations were not made against the suspects although both suspects were made *534 aware that the investigators had doubts about their stories; in both cases the suspects were not placed under formal arrest before being interrogated; in both cases the defendants were the focus of the investigation;[1] in both cases the suspects were asked to accompany the police to the police station; in both cases the suspects were not told that they were not free to leave; in both cases inculpatory statements were volunteered in the course of the interviews. See also Johnson v. State, supra, where, under strikingly similar facts, the main exception being that the defendant drove himself to the police station, this court also held that the defendant was not in custody for Miranda purposes.
The trial court made no formal findings of fact as to the basis of its ruling. Although we could remand the case for findings of fact so that we would know the basis of the trial court's ruling, as we did in the similar case of State v. Gaston, 512 So.2d 799 (Ala.Cr.App. 1987), we deem that to be unnecessary in this case because all of the material facts are before us and uncontested.
We conclude from our review of the evidence before the trial court at the suppression hearing that the trial court's decision to suppress Jude's inculpatory statement is palpably contrary to the weight of the evidence. The weight of the evidence clearly shows that a reasonable person in Jude's position would not have felt that he was in custody when he gave his statement. Consequently no Miranda warnings were required before the questioning of Jude. The judgment of the trial court must be reversed and the case remanded to the trial court for actions consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN and LONG, JJ., concur.
TAYLOR, P.J., dissents with opinion.
COBB, J., joins in the dissent.
TAYLOR, Presiding Judge, dissenting.
I dissent from the majority's reversal of the judgment in this case because the trial court's ruling on the motion to suppress the appellant's confession was erroneous.
The majority in this case holds that the trial court's finding that the accused was in custody when he made the statement to police and therefore was subject to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was not supported by the evidence. The reason I dissent is that I believe that this court should not reach this question for one basic reason: The trial court's ruling was based on conflicting evidence.
As the majority states, the evidence concerning the circumstances surrounding the conversation the accused had with Detective Michael Edward Shaneyfelt at his home before his being brought to the police station for questioning was conflicting. The appellant testified that Detective Shaneyfelt did not tell him he was free not to go to the police station and that once at the station he felt that he was not free to leave.
As this court stated in Allen v. State, [Ms. CR-94-1724, December 29 1995] ___ So.2d ___, ___ (Ala.Cr.App.1995): "In reviewing a trial court's ruling on a motion to suppress evidence, this court must make all reasonable inferences and credibility choices in support of the trial court's ruling." See also Patterson v. State, 659 So.2d 1014 (Ala.Cr.App. 1995). As this court further stated in Simmons v. State, 368 So.2d 315 (Ala.Cr.App. 1979):
"A review of the trial court's ruling in connection with a motion to suppress a confession is limited to determining whether its finding was clearly erroneous. United States v. Greer, 566 F.2d 472, 473 (5th Cir.1978). This is simply an application of the well settled rule that, where the trial court finds on conflicting evidence ... such finding is entitled to great weight and will not be disturbed on appeal, unless it appears contrary to the weight of *535 the evidence or is manifestly wrong. Vernon v. State, 239 Ala. 593, 599, 196 So. 96 (1940); Burks v. State, 353 So.2d 539 (Ala. Cr.App.1977); Thompson v. State, 347 So.2d 1371 (Ala.Cr.App.), cert. denied, 347 So.2d 1377 (1977); Hunter v. State, 38 Ala.App. 351, 83 So.2d 737 (1956)."
368 So.2d at 316. (Emphasis added.)
The majority relies on Smolder v. State, 671 So.2d 757 (Ala.Cr.App.1995), by analogy, and finds that under the circumstances of this case the trial court's ruling on the motion was erroneous. However, the majority's analysis fails for one very basic reason. In Smolder this court affirmed a trial court's ruling on a motion to suppress by resolving all credibility choices made by the court in the court's favor, using the strict standard of appellate review used when reviewing a trial court's ruling on a motion to suppress. See Simmons, supra. However, in this case the majority totally disregards the credibility choices made by the trial court in regard to the testimonial evidence presented at the suppression hearing. This case is not similar to Smolder for that reason. A trial judge, when acting as the factfinder, is entitled to the same deference as a jury. The judge is present at the trial and can judge the credibility of the witnesses and the weight of the evidence far better than an appellate court. Only the trial court has the opportunity to study the demeanor of the witnesses as they are testifying. Further, this court is not a second factfinder.
The state has the burden of proving that an extrajudicial statement is voluntary. Wright v. State, 489 So.2d 701 (Ala.Cr.App. 1986). The trial court resolved the credibility issue against the state, the party that had the burden of proving that the statement was voluntary. This ruling is supported by the record, is not "manifestly wrong," and should be affirmed. For this reason, I dissent.

On Application for Rehearing
PATTERSON, Judge.
The state appealed the trial court's grant of Marvin Ray Jude's motion to suppress his confession in the state's prosecution of Jude for the unlawful breaking and entering of a vehicle. We reversed the trial court's judgment and remanded the case in an opinion, State v. Jude, 686 So.2d 528 (Ala.Cr.App. 1996), with Judge Taylor dissenting and Judge Cobb joining in his dissent. Jude has filed a Rule 39(k) motion and an application for rehearing. We overrule the application for rehearing; we deny the Rule 39(k) motion; and we extend our opinion.
In our opinion, we stated that there was conflicting evidence as to what was said on the doorstep of Jude's house when Detective Shaneyfelt asked Jude to voluntarily accompany him to the police station to answer some questions. We extend this opinion to clarify our holding that while the evidence of what was said on the doorstep was conflicting, that conflict is immaterial to the determination of whether Jude was subjected to custodial interrogation.
Detective Shaneyfelt testified that when he asked Jude if he would be willing to accompany him to the police station, he told Jude that he was not under arrest. Jude, however, testified that he was not told that he was not under arrest. This conflict is immaterial because even if the trial court, in reaching its decision, accepted Jude's version, both Jude and Shaneyfelt testified that Jude was definitely not placed under arrest at that time, and Jude admitted that Detective Shaneyfelt's actions were inconsistent with an arrest. Even if the trial court believed that Jude had not been given the nugatory information that he was not under arrest, the fact remained, according to the testimony of the detective and Jude, that Jude had not in fact been arrested nor was he treated as an arrestee. Because Jude admitted that he knew that he was not being placed under arrest, the question whether he was entitled to Miranda warnings revolved solely around whether he was in custody when he gave the statement. The test of "custody," as we stated in our opinion, is not what Jude subjectively felt when he accompanied Detective Shaneyfelt to the police station or Detective Shaneyfelt's belief as to whether Jude was in custody. Rather the test is whether a reasonable person in Jude's shoes would have understood that he or she was in custody.
*536 In our opinion we referred to Smolder v. State, 671 So.2d 757 (Ala.Cr.App.1995), to point out that, under almost identical facts, the trial court correctly held that a "reasonable man" would not consider himself "in custody." In this case, the trial court, possibly not aware of Smolder, held that Jude was in custody. The trial court may have assumed, correctly or incorrectly, that Jude felt that he was in custody when he voluntarily went to the police station, but the trial court should not have substituted Jude's possible subjective impression for the hypothetical "reasonable man," who, we have determined, would not have thought that, under the same facts, he was in custody.
Former Chief Justice Warren Burger of the United States Supreme Court made a speech in which he clearly articulated the hindrance we would create for legitimate effective law enforcement were we to affirm the trial court's ruling in this case: "The seeming anxiety of judges to protect every accused person from every consequence of his voluntary utterances is giving rise to myriad rules, subrules, variations and exceptions which even the most alert and sophisticated lawyers and judges are taxed to follow. Each time the judges add nuances to these rules, we make it less likely that any police officer will be able to follow the guidelines we lay down." The Quotable Lawyer p. 181 (David Shrager & Elizabeth Frost eds., New England Publishing Associates, Inc. 1986).
APPLICATION FOR REHEARING OVERRULED; ALA.R.APP.P. 39(k) MOTION DENIED; OPINION EXTENDED.
McMILLAN and LONG, JJ., concur.
TAYLOR, P.J., adheres to his dissent.
COBB, J., is not sitting.
NOTES
[1] See Hooks v. State, 534 So.2d 329, 349 (Ala.Cr. App.1987), aff'd, 534 So.2d 371 (Ala.1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989) ("The fact that the appellant was a suspect or that the investigation had focused on him when he arrived at the police station is not determinative of custody.").