The appellant, David Seagroves, was convicted of robbery in the first degree, a violation of § 13A-8-41, Code of Alabama 1975, was sentenced as a habitual offender to life imprisonment without the possibility of parole, and was ordered to pay $500 to the victims compensation fund and court costs. At his sentencing hearing, the state proved that he had been convicted of six prior felonies — three for burglary, one for theft in the *Page 740 
first degree, one for escape, and one for robbery in the first degree.
The state's evidence showed that on the afternoon of May 21, 1986, the appellant, armed with a gun and wearing a pair of pantyhose over his face, entered Special Touch Antique Mall on U.S. Highway 31 in Morgan City in Morgan County and robbed the owner, Carolyn Gatlin, at gunpoint, of $135.
The appellant offered no evidence in his defense and did not testify in his own behalf. He was represented at trial by appointed counsel and was represented on appeal by different appointed counsel. He raises four issues on appeal, but he does not question the sufficiency of the evidence to support his conviction. While we are not required to review a question of the sufficiency of the evidence to support a conviction in a noncapital case when that issue has not been raised on appeal, see Rule 45B, Ala.R.App.P., we, nevertheless, have reviewed it in this case and find the evidence in support of the conviction overwhelming.
To better understand the first two issues the appellant raises, it is necessary to set out the pertinent facts regarding the robbery and the apprehension of the appellant.
On May 21, 1986, during business hours, the appellant, on four or five occasions over a period of several hours, entered and then left the Special Touch Antique Mall. Each time, he parked his pickup truck nearby. He was observed by Gatlin, several of her customers, visitors, and others in the area. Gatlin and others engaged in conversations with him. The appellant asked Gatlin to hold an item in the store for him until the next day and said that he would come back then and pay for it. He gave Gatlin a name, which turned out to be fictitious, and placed a hold on the item. Witnesses described the appellant's truck as a brown or rust-colored Ford pickup truck with a white top and no tailgate. Gatlin and others described the appellant as a white male, approximately 5 feet, 10 inches in height, approximately 30 years old, with shoulder-length hair, a mustache, and tattoos on his arms. They said they could smell an odor of alcohol about him and that he was wearing a short-sleeved white T-shirt when he was first seen in the store. Several witnesses testified that he appeared "out of place" in an antique store.
Gatlin testified that around 5:45 p.m., while she was talking on the telephone, the appellant came back in the store; that he had a pair of pantyhose over his face; that he was wearing a long-sleeved green and blue shirt; that he had a gun in his hand ("square, like guns you see on T.V. that police carry"); that he pointed the gun at her, ordered her to put the telephone down, informed her that it was a robbery, and ordered her to give him the "cash"; that she put the telephone down, opened the cash register, and gave him $135; that after unsuccessfully trying to get her to lie on the floor, he left; and that she immediately called the police. She testified that, to her knowledge, she had never seen the appellant before that day and that the person who robbed her was the same person who had been in and out of and hanging around her store that day. She positively identified the appellant in court as the robber and stated, "[T]here's no chance of me being wrong." Three other persons who were customers or visitors in the store that day positively identified the appellant in court as being in the store while they were there, and gave detailed descriptions of him.
Upon receiving the telephone call from Gatlin, the police immediately put out a radio dispatch or BOLO ("be on the look out") to all police stations in the surrounding area, giving a description of the robber and the truck. As the robber was fleeing the scene of the robbery, he ran a stop sign nearby and ran his truck into the yard of Terry Perry. Perry called the police and gave them a description of the person and the truck, and told them the truck was traveling toward Cullman County. The police immediately dispatched the information over their radio to all stations. Perry described the truck as a Ford pickup, light-colored with a white top, and without a tailgate. He described the person as a white male, not big, with long hair down to his shoulders and a mustache, wearing a light-colored tank top shirt, and with tattoos on both arms. A number of people living along the route and following the events on their police scanners periodically *Page 741 
reported the suspect's location to the police, as he proceeded toward Cullman County.
Cullman County Deputy Sheriff Ewell Gay was on patrol in a marked patrol car when he received a BOLO around 7:00 p.m., advising him of an armed robbery in nearby Morgan County and describing the suspect's vehicle as a "rusty brown or beige pickup truck" and the suspect as "a white male, approximately 30 years old, shoulder-length hair, sleeveless T-shirt and tattoos." Around 7:20 p.m., Gay was sitting in his patrol car in front of a convenience store in Vinemont in Cullman County, about 25 miles from the scene of the robbery, when he saw a white male wearing a sleeveless T-shirt walk from behind the convenience store. According to Gay, the man hesitated when he saw the patrol car and "looked startled." The man approached the patrol car and told Gay that his vehicle had broken down, that it was behind the convenience store, and asked Gay if he knew some place that would sell him a tire that time of the night. The man's speech was "somewhat slurred," and he seemed intoxicated to "some degree." Gay testified: "Because I felt like he was to some degree intoxicated, I had him sit down in my car, and I drove him around behind the store to see if I could help him, what his problem was." Gay saw the man's pickup truck parked in a public area at the rear of the convenience store, close to an automotive shop, and noticed that the left rear tire was flat and that the truck obviously had been driven for some distance on the flat tire because the tire was almost off the rim. At this point, Gay recalled the robbery BOLO he had received earlier and realized that the man and the truck matched the general descriptions given in the BOLO. Gay radioed his dispatcher and advised him that he was getting out of his patrol car to check the pickup truck because he suspected that it might have been involved in the robbery. He left the man sitting in his patrol car, and approached the pickup truck. He noticed that the flat tire was ruined and would have to be replaced. He looked inside the truck through the window and saw in plain view a green and blue shirt and a pair of pantyhose lying on the seat and something that appeared "metallic" that he could not identify "stuck" under the seat. Becoming more suspicious, he returned to his patrol car, radioed his dispatcher again, and requested that she call Morgan County to get further information. A few minutes later, the dispatcher called back and told him that the robber had been wearing a green and blue shirt and had covered his face with a pair of pantyhose and that he had been armed with "what appeared" to be a 9 mm or a .380 caliber semiautomatic pistol. Realizing that a gun would pose a threat to him, he asked the man if there was a gun in the truck, and the man answered that he had a BB gun under the seat. Gay then told the man that there had been a robbery in Morgan County, that he and his truck matched the description of the robber and the robber's truck, and that he was being "detained" until the Morgan County authorities arrived. The appellant was later identified as the man who had robbed the antique store.
Gay denied that he had placed the appellant under arrest, but he stated that he told him that he was being detained and that he had to stay in the patrol car, and that the appellant was not free to leave. The state concedes that at this point the appellant was in custody.
Deputies Terry Johnson and John Paul Jones, traveling separately, arrived shortly from Morgan County. Johnson took charge of the investigation. After being briefed by Gay about what had occurred in Cullman County and by Jones about the details of the robbery in Morgan County, including the description of the suspect and the truck, Johnson read the appellant, who was still in Gay's patrol car, his Miranda rights. The appellant refused to sign a waiver of those rights. Johnson told the appellant that he wanted to talk with him about the robbery at the antique store in Morgan County, and the appellant said, "[I] didn't rob no antique place and that was it." Johnson then approached the pickup truck, and he saw through the window in plain view a blue and green shirt and a pair of pantyhose, and with the aid of a flashlight, he was able to see a gun partially under the seat. He entered the truck, and removed the shirt, the pantyhose, *Page 742 
and the gun. The gun was a BB pellet gun that resembled a 9 mm pistol, the type of gun carried by police officers. Johnson also found a business card from the antique store on the seat.
 I.
The appellant first contends that the trial court erred in denying his motion to suppress the statement he made in response to Gay's question whether he had a gun in the truck. He contends that the statement that he had a BB gun under the seat was obtained as the result of custodial interrogation, in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966). It is true that Gay did not give the appellantMiranda warnings before asking him if he had a gun in his truck; however, "[t]he protections afforded a suspect under Miranda
apply only when the suspect is both in custody and being interrogated." United States v. Lawrence, 952 F.2d 1034, 1036
(8th Cir.), cert. denied, 503 U.S. 1011, 112 S.Ct. 1777,118 L.Ed.2d 434 (1992). The absence of Miranda warnings does not forbid the introduction in evidence of statements by a defendant that are not the product of custodial interrogation. Kelley v.State, 366 So.2d 1145 (Ala.Crim.App. 1979), and cases cited therein. To decide if a suspect is in custody, the court, looking at the totality of the circumstances, must find that a reasonable person in the suspect's position would believe that he or she is not free to leave. Landreth v. State, 600 So.2d 440, 444
(Ala.Crim.App. 1992).
In the present case there was no custodial interrogation. It is clear from the record that when the question was asked, no arrest had been made and the appellant was not in custody. The record shows that up to that point, nothing had transpired that would have led the appellant to believe that he was being restrained in any manner and that it would have been reasonable for him to believe that he could get out of the patrol car and walk away if he desired. Up to that point, the appellant would have been fully justified in believing that Gay was only trying to help him with his tire problem.
The trial court's denial of the appellant's motion to suppress his statement to Gay that he had a BB gun in his truck was correct; the statement was admissible in evidence.
Even if we were to assume, for the sake of argument, that the appellant was in custody when he made the statement, any error in admitting the statement would be harmless, because the gun was subsequently discovered and seized as the result of a lawful search of the truck. Ala.R.App.P. 45.
Furthermore, we find that the pre-Miranda question asking whether the appellant had a gun in his truck would be permissible under the "public safety" exception to the Miranda rule. New Yorkv. Quarles, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). When confronted with that particular set of circumstances, i.e, a suspected armed robber, who was obviously intoxicated "to some degree," and not knowing whether there might be accomplices nearby, Gay had a right to ask such a question in the interest of his own safety and that of others in the area. In fact, Gay testified that the possibility that the metallic object was a gun posed a threat. See United States v. Knox, 950 F.2d 516 (8th Cir. 1991).
 II.
The appellant next contends that the trial court erred in denying his motion to suppress evidence seized in the warrantless search of his pickup truck. He argues that the automobile exception to the requirement of a search warrant did not apply in this case and that the plain-view doctrine did not supply the necessary probable cause to search the truck. In denying the motion, the trial court stated:
 "[H]aving considered the totality of what was before the officers, both what they were told about what had taken place in Morgan City as well as what they viewed there down in Vinemont in terms of the truck and the person with the truck, I am satisfied that given the totality of those circumstances and the reasonable inferences that could be drawn that the officers did have probable cause to believe that the vehicle and/or the individual had been involved *Page 743 
in illegal activity and also that the vehicle contained evidence of some illegal activity.
". . . .
 "I think there are two exceptions that come into play here . . . plain view exception . . . and automobile exception."
The items seized in the search of the truck that the appellant contends should not have been admitted are the pantyhose, the blue and green shirt, the BB gun, and the business card from the antique store. All of these items were lying on the front seat of the truck, except the gun, which was partially under the seat but which was, according to Johnson, visible from outside the truck.
The Fourth Amendment does not require that police obtain a warrant to search an automobile when they have probable cause to believe it contains contraband or evidence of criminal activity.United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157,72 L.Ed.2d 572 (1982); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975,26 L.Ed.2d 419 (1970) (warrantless search of vehicle valid when police had probable cause to believe automobile contained evidence of service station robbery because automobile matched description given by eyewitnesses). Two rationales underlie the automobile exception to the warrant requirement. First, the inherent mobility of vehicles creates exigent circumstances that make obtaining a warrant impractical. United States v. Chadwick,433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Second, there is a lessened expectation of privacy in automobiles because of physical characteristics and pervasive regulation of moving vehicles. Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586,61 L.Ed.2d 235 (1979); California v. Carney, 471 U.S. 386,105 S.Ct. 2066, 85 L.E.2d 406 (1985); Mewbourn v. State, 570 So.2d 805
(Ala.Crim.App. 1990).
Generally, to be valid, a warrantless search must be accompanied by certain circumstances that would render the act of obtaining a warrant either useless or unreasonable. One such situation in which a warrant is not required is where exigent circumstances exist concurrently with probable cause. Land v.State, 678 So.2d 201 (Ala.Crim.App. 1995), aff'd, 678 So.2d 224
(Ala.), cert. denied, ___ U.S. ___, 117 S.Ct. 308,136 L.Ed.2d 224 (1996) (warrantless search of appellant's vehicle was valid because the police had probable cause to believe that appellant had committed a crime, and the vehicle's inherent mobility was a sufficiently exigent circumstance). In cases involving searches of automobiles, the vehicle's inherent or potential mobility establishes a presumption of exigent circumstances. Mewbourn v.State. No exigent circumstances other than the motor vehicle itself are required to justify a warrantless search of a motor vehicle if there is probable cause to believe that it contains the instrumentality of a crime or evidence pertaining to a crime and the vehicle is in a public place. Stanfield v. State,529 So.2d 1053 (Ala.Crim.App. 1988); 3 W. LaFave, Search and Seizure § 7.2(b) at 37-41 (2d ed. 1987).
In the present case, the pickup truck, when found, was found stationary in front of an automotive business in a public place. Even though it had a flat tire and had been driven some distance on the tire and rim, it was still capable of being driven on the highway. Even though the appellant was in custody in the patrol car nearby when the search was made, the exigent circumstance was the possibility that some of his friends or accomplices might move the vehicle and thus dispose of important evidence before the police could secure a search warrant.
Finding the existence of exigent circumstances, we must now determine whether probable cause existed to search the truck. After reviewing the information possessed by the officers at the time of the search, we find that they had sufficient information to warrant a man of reasonable caution in the belief that the appellant had committed the robbery of the antique store and that his truck contained evidence of the crime. We conclude that the officers had sufficient probable cause to search the truck and that sufficient exigent circumstances existed to make obtaining a warrant impractical. The trial court's denial of the motion to suppress the evidence seized was proper, and the evidence seized was properly admitted. *Page 744 
Notwithstanding the fact that there was sufficient probable cause to search the truck, we also hold that the evidence was properly admitted because it was in "plain view" through the window of the truck. "It is a fair generalization that if a law enforcement officer is able, by the use of his natural senses, to discover what is inside a vehicle while `standing in a place where he had a right to be,' this discovery does not constitute a Fourth Amendment search." W. LaFave, 1 Search Seizure § 2.5(c) at 449 (2d ed. 1987). See also United States v. Dunn,480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (use of flashlight does not invalidate seizure of item in plain view).
 III.
The appellant contends the trial court erred in allowing the prosecuting attorney to ask Gatlin, a state witness, leading questions on direct examination "Whether to allow or disallow leading questions is discretionary with the trial court and except for a flagrant violation will there be reversible error."Ruffin v. State, 582 So.2d 1159, 1162 (Ala.Crim.App. 1991) (quoting Jones v. State, 292 Ala. 126, 128, 290 So.2d 165, 166
(1974)); Ala. Code 1975, § 12-21-138; C. Gamble, McElroy'sAlabama Evidence § 121.05 (3d ed. 1977); 81 Am.Jur.,Witnesses § 430 (1977).
After a review of the record, we find that the trial court did not err in overruling the appellant's objections to the leading questions. Clearly, there was no abuse of discretion here. The trial court allowed some leading questions to prevent the witness from repeatedly giving hearsay testimony. The trial court's exercise of discretion was favorable to the appellant.
 IV.
Last, the appellant; contends that the trial court erred in allowing the state to introduce into evidence photographs that were not delivered to him in the pretrial discovery process. Specifically he contends that the state, when it photocopied his driver's license and included it in the discovery package delivered to him, also had a duty to photocopy a photograph of his truck and deliver it to him. He argues that simply affording him the opportunity of inspecting the physical evidence in the state's possession and allowing him to copy it was insufficient to meet the requirements of Ala.R.Crim.P. 16.1(c).
Rule 16.1(c) provides that upon written request of the defendant, the prosecutor shall permit the defendant to "analyze, inspect, and copy or photograph books, papers, documents, photographs, tangible objects, buildings, places, or portions of any of these things, which are within the possession, custody, or control of the state" that are material to the preparation of the defendant's case. The appellant alleges that the state failed to provide him with a photocopy of the state's photograph of his truck. This is not a duty imposed on the state by Rule 16.1. The state was required to allow the defendant to inspect and copy the photograph if he desired. The state provided him that opportunity, and he did not take advantage of it, and nothing more is required of the state under the discovery rule. Graysonv. State, 675 So.2d 516 (Ala.Crim.App. 1995), cert. denied, ___ U.S. ___, 117 S.Ct. 309, 136 L.Ed.2d 225 (1996). This issue is without merit.
After addressing all the issues raised and finding no merit in them, we conclude that the judgment of the trial court is due to be, and it is hereby, affirmed.
The foregoing opinion was prepared by Retired Appellate Judge JOHN PATTERSON while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
AFFIRMED.
LONG, P.J., and McMILLAN, COBB, and BROWN, JJ., concur.
BASCHAB, J., concurs in result only. *Page 745