PER CURIAM.
Christopher Okafor appeals from a summary judgment the Madison Circuit Court (“the trial court”) entered condemning money that had been seized by law-enforcement officers during the search of a residence. For the reasons discussed below, we reverse the trial court’s judgment.
On February 8, 2013, the State of Alabama (“the State”), pursuant to § 20-2-93, Ala.Code 1975, filed a complaint in the trial court seeking to condemn $16,500 in currency (“the currency”). According to materials submitted in support of and in opposition to a motion for a summary judgment filed by the State, investigators of the Madison-Morgan County Strategic Counter Drug Team (“SCDT”) and the Madison County District Attorney’s Office seized the currency from a residence on February 7, 2013. Okafor was present at the residence when the currency was seized. On July 2, 2013, Okafor filed an answer in which he asserted that he was the lawful owner of the currency, that the currency was not subject to condemnation, and that SCDT investigators had obtained the currency during an unlawful search and seizure.
In support of its summary-judgment motion, the State attached the affidavit of Matt Thornbury, an investigator assigned to the SCDT. Thornbury testified as follows:
“2. On February 7, 2013, I, along with two other investigators with the District Attorney’s Office, went to [a residence] in Huntsville, Alabama, in an attempt to serve a subpoena for trial on Christopher Okafor who was witness in a double homicide. Upon arriving at the residence, Investigator Nettles and this investigator approached the front door of the residence and made contact with the home owner, [Shanna] Hereford. Upon Hereford opening the front door to the residence, investigators detected a strong odor of marijuana coming from the residence. Upon contact with Hereford, Investigator Nettles advised Hereford that investigators were with the Madison County District Attorney’s Office and needed to speak with Christopher Okafor. Hereford advised that Okafor was not at the residence and began to act nervous.
*75 “3. At this same time, Investigator Turner, who was standing in the yard of the residence, observed Okafor look out the den window of the residence. At this time, investigators stepped into the residence to speak with Hereford and Okafor. Upon entrance to the residence, investigators continued to detect a very strong odor of marijuana in the residence. Investigators verbally announced for Okafor who came out of the downstairs den area of the residence. Okafor was patted down for officer safety and Investigator Turner explained to Okafor the reason for our visit. Investigator Turner and Investigator Nettles served the subpoena on Okafor at that time. While speaking with Okafor, Investigator Turner asked Okafor if there was marijuana in the residence and Okar for advised that there was in fact marijuana in the residence. Investigator Turner spoke with Hereford who also advised that there was marijuana in the residence.
“4. While at the residence, ... Hereford was presented with a voluntary consent to search form which she read and indicated she understood. Hereford subsequently signed permission to search the residence.
“5. At this time this investigator spoke with Okafor who advised that he did not live at the residence and therefore could not sign consent for the residence. Okafor did advise this investigator and Turner that the marijuana was located in the downstairs bedroom closet in a white plastic bag. Okafor advised investigators of this not after questioning but while explaining the consent to search form. Okafor got up while explaining the form and went to the downstairs bedroom closet and pointed out the marijuana to investigators.
“6. At this time, Investigator Turner recovered a white plastic bag containing two clear plastic bags of marijuana, approximately 92.5 grams gross weight and a set of digital scales. Upon searching the downstairs bedroom closet, investigators took note of the all male clothing that was in the closet along with the 18 pairs of mens tennis shoes in the closet. Agents also located a hidden compartment in a can which contained packaging materials for controlled substances. Upon a further search of the downstairs bedroom, this investigator located $15,000 in U.S. Currency bundled in $5,000 stacks located in the top dresser drawer. Investigator Turner located $1,500 in U.S. Currency in the top nightstand drawer.
“7. Although ... Hereford signed a receipt for the U.S.... Currency, both she and Okafor denied any knowledge or ownership of the U.S. Currency.
“8. A further search of the residence revealed a Beretta Model 21A handgun in the top of the closet in the downstairs bedroom. The firearm had 4 live rounds in the magazine. Also located beside the firearm was a box of 46 live .32 cal handgun rounds. At this time Investigator Turner spoke with Hereford about the weapon. Hereford advised that the weapon did not belong to her. Hereford advised that the only weapon that she owned was a 9mm Ruger handgun located in the upstairs bedroom.”
In his response to the State’s summary-judgment motion, Okafor contended that the SCDT investigators lacked probable cause or consent to enter Shanna Hereford’s residence, that the SCDT investigators failed to advise him of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that consent for the search of the residence was not given knowingly, intelligently, and/or freely. Okafor attached to his *76 response a document titled “Intake Sheet” that Thornbury purportedly completed.[1] The intake sheet provided a summary of the search of the residence:
“[Investigators] went tp [the] address to talk to [Okafor] about a murder case as a witness. The woman who answered the door said he wasn’t present but [the investigators] saw [him] look out a window. [They] entered and smelled [marijuana] and they called out for him. He was asked about [marijuana] after the smell was apparent and he told .them it was in the closet. [The investigators] found [two] large bags of [marijuana], a set of scales and a lot of men’s clothing. They also found $16,500.... Both occupants denied ownership of the money.”
Okafor also submitted Shanna Hereford’s affidavit, which contained the following testimony:
“On or about February 7, 2013, four officers of the law arrived at the' home where Chris Okafor and I were residing with our children. On that day when they knocked at the door and I went and stood in the doorway there was no aroma of marijuana or any illegal substance at or around the door. The wind was blowing outside-, at the time- the police stood on my front steps, which is not an enclosed area.
“The police officers never possessed, or said they possessed a lawful ¡search warrant for my home when they arrived. I never consented for the police officers to enter my home. I am a person of suitable age and discretion, I resided at the home, but the police officers never suggested or stated they wanted to leave a witness subpoena for Chris Okafor. Upon information and belief I now knbw under Rule 17.4(d)(2)[, Ala. R.Crim. P.,] the police officers could have lawfully served the witness subpoena for Chris Okafor by simply handing it to me, since by their .own admission,.in the affidavit of Officer Matthew Thornbury, someone allegedly saw Chris Okafor in the home and they believed him to reside there.
“Four officers of the law forced entry into my home. With loud voices, yelling, carrying weapons and using physical force they intimidated me and' assaulted me by pushing me back into my home as they unlawfully entered, the police officers were aggressive and induced fear in me.
“Only after they, entered the home did they say they smelled marijuana. Chris Okafor showed them where unburnt marijuana was kept approximately fifty feet away, packaged in a box in the back of a closet. There was no smell of marijuana in the home. No Miranda warnings were given [to] us before questioning. The questions assumed we were guilty of a crime and their questions would likely induce a self-incriminating statement, as it actually did. I was told the police were not going to leave my home until they searched it. My written consent was not freely given.to them inasmuch as I was threatened they would not-leave my home unless it was searched. In fact I was told they could search my home, regardless, only it would take longer. In fact before they submitted a document to me for my signature, they had already searched-my home. Our freedom was constrained at the time of the unlawful search, and at the time they asked us questions.
“The form .given to me was never explained to me as a consent to search. *77 The document was shown to me after Chris Okafor showed the police officers where the unburnt marijuana was located. The Police informed me I had to sign the document so they could remove the marijuana from my home. No one told me I had a right not to sign the document. I believe I was under duress from the time the police officers unlawfully entered my home until the time they left the premises.”
Okafor filed a supplement to his. response to the motion for a summary judgment on April 1, 2015, in which he argued that “the Alabama Forfeiture Laws require an evidentiary link between the property seized and unlawful conduct. No such link was provided by the [the State].”
After a hearing on the summary-judgment motion, the trial court entered a judgment on April 1, 2015, granting the State’s motion, declaring that the currency was contraband, and ordering the currency forfeited to the State. See § 20-2-93(a)(4). On May 11, 2015, Okafor filed a completed docketing statement in the trial court. On May 14, 2015, Okafor filed a notice of appeal in the trial court.
As a threshold matter, we must determine whether Okafor filed a timely notice of appeal from the trial court’s April 1, 2015, summary judgment. “The timely filing of the notice of appeal is a jurisdictional act.” Thompson v. Keith, 365 So.2d 971, 972 (Ala.1978). “Lack of subject matter jurisdiction may not be waived by the parties and it is the duty of an appellate court to consider lack of subject matter jurisdiction ex mero motu.” Ex parte Smith, 438 So.2d 766, 768 (Ala.1983) (citing City of Huntsville v. Miller, 271 Ala. 687, 127 So.2d 606 (1958), and Payne v. Department of Indus. Relations, 423 So.2d 231 (Ala.Civ.App.1982)).
Rule 4(a)(1), Ala. R.App. P., provides, in pertinent part, that,
“in all cases in which an appeal is permitted by law as of right to the supreme court or to a court of appeals, the notice of appeal required by Rule 3[, Ala. R.App. P.,] shall be filed with the clerk ..of the trial court within 42 days (6 weeks) of the date of the entry of the judgment or order appealed from, or within the time allowed by an extension pursuant to Rule 77(d), Alabama Rules of Civil Procedure.”
Rule 3(c), Ala. R.App. P., provides the requirements for the form' and contents of the notice of appeal. That riile reads as follows: “The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the ’court to which the appeal is taken. Such designation of judgment or order shall not, however, limit the scope of appellate review.”
In the’ present case, Okafor filed his notice of appeal on May 14, 2014, qr 43 days after the trial court entered the summary judgment. On May 11, 2015, however, Okafor filed in the trial court the docketing statement prescribed by Rule 3(e), Ala. R.App. P. Rule 3(e) provides:
“Each notice of appeal to an appellate court, at the time it is filed with-the trial court; shall be accompanied by the appropriate ‘Docketing Statement’ (Form 24, 25, or 26). If the notice of appeal is given orally in a criminal case, the docketing statement shall be filed within 7 days (1 week) after the oral notice of appeal is given. However, the appellant’s failure to file the docketing statement with the notice of appeal shall not affect the validity of the notice of appeal. The appellant, or if the appellant is represented by counsel, then the appellant’s attorney, shall complete and sign the docketing statement before it is filed *78 with the court. If the notice of appeal is tendered to the clerk of the trial court without a properly completed docketing statement, the clerk shall accept the notice of appeal and shall inform the person filing it of the requirements of this rule, and the appellant, or, if the appellant is represented by counsel,, then the appellant’s attorney, shall promptly file a properly completed docketing statement. The clerk of the trial court, when serving the notice of appeal as specified in this rule, shall attach thereto a copy of the docketing statement, if available. If, on the date the notice of appeal is served, the docketing statement is not available, it shall be served on those persons on whom the notice of appeal was served as soon as it becomes available. For the failure to comply with the requirements of this rule, the appellate court in which the appeal is pending may make such orders as are just, including an order staying the proceedings until the docketing statement is filed or, after proper notice, an order dismissing the appeal; and, in lieu of any orders or, in addition to any orders, the court may treat the failure to comply with the requirements of this rule as contempt of court.”
We must determine whether the filing made by Okafor on May 11, which was within the 42-day period to perfect an appeal, satisfied the requirements of Rule 3(c) in order for his appeal to this court to be considered timely.
“‘Rule 3, Alabama Rules of Appellate Procedure, provides an uncomplicated means of effecting an appeal.’” Veteto v. Swanson Servs. Corp., 886 So.2d 756, 762 (Ala.2003) (quoting Threadgill v. Birmingham Ed. of Educ., 407 So.2d 129, 132 (Ala. 1981)).
“The test for dismissal for failure to comply seems to be whether the intention to appeal from a specific judgment may be reasonably inferred from the text of the notice. Jones v. Chaney & James Const. Co., 399 F.2d 84 (5th Cir. 1968); Donovan v. Esso Shipping Co., 259 F.2d 65 (3rd Cir.1958)
[[Image here]]
“While we might not be willing to go so far as to require the designation of each appellee in the notice of appeal, we do think that fairness requires that some indication appear that an appeal has been taken to reverse a judgment rendered in favor of a prevailing party....
“This conclusion probably would not be warranted in a case involving a single appellee. A notice of appeal indicating that an appeal has been taken from a judgment favorable to the appellee should give him notice that review might be sought as to matter not specified in the notice of appeal. In fact, that is contemplated by [Rule] 3(c).
“The spirit of the [Alabama Rules of Appellate Procedure] is recognized and restated to insure the just, speedy and inexpensive determination of every appellate proceeding on its merits. The only jurisdictional rule in the entire rules is the timely filing of the notice of appeal. Nothing in the rules is designed to catch the unwary on technicalities. Jones v. Chaney & James Const. Co., supra. A simple statement indicating what judgments the appellant appeals from is all that is required.”
Edmondson v. Blakey, 341 So.2d 481, 483-84 (Ala.1976).
In McLin v. State, 840 So.2d 937 (Ala. Crim.App.2002), a defendant in a criminal case filed as his written notice of appeal to the Court of Criminal Appeals a form titled “Notice of Appeal to the Alabama Court of Criminal Appeals by the Trial Court Clerk” within the period to perfect an appeal. 840 So.2d at 939. In accepting *79 the document as a sufficient notice of appeal pursuant to Rule 3(c), the Court of Criminal Appeals held:
“This particular form was specifically designed for use by circuit court clerks to transmit notice to this Court that someone has filed an appeal; by signing the signature line provided on the form, the clerk of the circuit court certifies to this Court that all the information contained in the form is accurate. This certification is required because it is from the information contained on the form that this Court dockets every appeal. Use of this court form or any other court form in a manner or for a purpose other than that for which it was designed is inappropriate and cannot help but lead to confusion, as has happened in this case. Because the form used in this case was not designed for use by appellants or their attorneys, and to better ensure the accuracy of the information upon which all appeals are docketed, this Court strongly discourages the local practice by some circuit court clerks of requesting and/or allowing appellants or their attorneys to complete this form whenever an appeal is taken to this Court. We likewise strongly encourage appellants and their attorneys to use Sample Form 11 in the Appendix to the Alabama Rules of Appellate Procedure, or something similar thereto, when filing their written notices of appeal [to the Court of Criminal Appeals]. Although neither approved nor adopted by the Alabama Supreme Court, that sample form is an appropriate form for filing notices of appeal [to the Court of Criminal Appeals]; it satisfies the requirements of Rule 3(c), and it includes an area for the signature of the appellant’s attorney. Moreover, use of this sample form will not result in confusion or complications in perfecting appeals that may result from the use of an inappropriate form.
“Although we find that McLin’s use of the form entitled ‘Notice of Appeal to the Alabama Court of Criminal Appeals by the Trial Court clerk as his written notice of appeal was improper, we nevertheless conclude that it was sufficient to perfect his appeal. The form designated the party taking the appeal, the judgment appealed from, and the name of the court to which the appeal was being taken; we can reasonably infer McLin’s intent to appeal from the text of the document; and the document was timely filed. Therefore, we find that this form was sufficient to perfect McLin’s appeal.”
840 So.2d at 942 (footnote omitted).
In the instant case, before the time for appealing from the summary judgment had expired, Okafor had filed only the docketing statement required pursuant to Rule 3(e). Just as the appellant in McLin, Okafor used an improper form to declare his intent to appeal from the summary judgment. The language of Rule 3(e) specifically requires that the docketing statement “accompan[y]” a “notice of appeal,” indicating that two documents are required to be filed. We question whether our supreme court, by adopting Rule 3(e), envisioned that the docketing statement could serve a dual purpose—its intended purpose per Rule 3(e) and as a substitute for the notice of appeal.
Nonetheless, the docketing statement that Okafor filed contains all the information required by Rule 3(c), including the order appealed from, the party taking the appeal, and the name of the court to which the appeal is taken. This court can reasonably infer from the text of the docketing statement that Okafor intended to appeal the trial court’s summary'judgment; thus, liberally construing Rule 3(c), we *80 conclude that Okafor’s filing of the docketing statement satisfied the requirements of that rule. See Edmondson v. Blakey, supra.
Just as the Court of Criminal Appeals encouraged in McLin, this court also strongly encourages appellants and attorneys to utilize the sample forms that appear in the Appendix to the Alabama Rules of Appellate Procedure when filing appeals to this court. Sample Form 1 in Appendix I, Ala. R.App. P., which is also designated' Form ARAP-1, is the standard notice of appeal for appeals to our supreme court and to this court. Sample Form 25 in Appendix I, Ala. R,App. P., is the uniform docketing-statement form that an appellant can complete and file to satisfy the requirement of Rule 3(e) in appeals to this court. See also Rule 50, Ala. R.App. P. (“The forms contained in ‘Appendix I. Forms; Examples,’ are provided as general examples and should be modified to comport with the particular circumstances of each case; they have not been approved or adopted by the Alabama Supreme Court as officially approved forms.”). Despite our conclusion under the facts of the present case, we strongly discourage appellants and their attorneys from using the docketing statement as a notice of appeal.[2]
Having determined that this court has jurisdiction over Okafor’s appeal, we next consider the merits of Okafor’s appeal from the summary judgment condemning the currency pursuant to § 20-2-93.
“ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion.’ McClendon v. Mountain Top Indoor Flea Market,. Inc., 601 So.2d 957, 958 (Ala.1992).
“‘A summary judgment is proper when there is no genuine issue of material fáct and the moving party is entitled to a judgment as a matter of laW. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima fa’cie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in alight most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact—“evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to. be proved.” Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
“Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala.1994). Questions of law are reviewed de novo, Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).’’
Chancellor v. White, 34 So.3d 1270, 1273 (Ala.Civ.App.2008).
Alabama’s controlled-substances forfeiture statute provides, in pertinent part;
“(a) The following are subject to forfeiture;
*81 [[Image here]]
“(4) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of any law of this state; all proceeds traceable to such an exchange; and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of any law of this state concerning controlled substances;
[[Image here]]
“(9) All property of any type whatsoever constituting, or derived from, any proceeds obtained directly, or indirectly, from any violation of any law of this state concerning controlled substances;
[[Image here]]
“(b) Property subject to forfeiture under this chapter may be seized by state, county or municipal law enforcement agencies upon process issued by any court having jurisdiction over the property. Seizure without process may be made if:
[[Image here]]
“(4) The state, county or municipal law enforcement agency has probable cause to believe that the property was used or is intended to be used in violation of this chapter.”
§ 20-2-93, Ala.Code 1975.
On appeal, Okafor contends that, among other things, the law-enforcement officials involved in the seizure of the currency failed to apprise him of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before questioning him at the residence.
We first note the dissenting judges’ position that Okafor did not properly present this issue for appellate review. Specifically, the dissent points out that, in his brief, Okafor .did not identify any statements that- he made “in violation of the Miranda requirements,” that Okafor did not develop a legal argument as to whether he was subjected to a custodial interrogation for purposes of Miranda, and that Okafor did not address whether certain, evidence should have been excluded based on Miranda. 225 So.3d at 84.
Admittedly, the legal arguments Okafor sets forth in his brief to this court are minimal at best. Nonetheless, he does include authority standing for the proposition that, in a custodial interrogation, he was to have been advised of his rights under Miranda. The authority he cites also defines what constitutes a custodial interrogation. Furthermore, in considering his brief, we are able to ascertain that Okafor is contending that, when law-enforcement officials questioned him about the presence of marijuana in the house without first advising him' of his rights under Miranda, he was deprived of his protections under the Fifth Amendment of the United States Constitution and § 6 of the Alabama Constitution of 1901 against making an involuntary confession or some other inculpatory statement.
Even if we were to conclude, as the dissent does, that the brief fails to comply with Rule 28, Ala. R.App. P., it is well settled that, although
“this court may choose to affirm a case on the basis of Rule 28 when an appellant’s brief fails to comply with the rule, ... this court is by no means required to do so. See Kirksey v. Roberts, 613 So.2d 352, 353 (Ala.1993); Bishop v. Robinson, 516 So.2d 723, 724 (Ala.Civ. App.1987); and Thoman Eng’rs, Inc. v. McDonald, 57 Ala.App. 287, 289, 328 So.2d 293, 295 (1976). The decision is a matter of discretion, and considerations *82 other than compliance with the rule are integral to the exercise of that discretion. Among those other considerations are whether the argument ‘has been raised in a manner which is fair to all concerned,’ McDonald, 57 Ala.App. at 290, 328 So.2d at 294; whether the ap-pellee adequately responds to the issues raised by the appellant in brief despite the noncompliance, Bishop, 516 So.2d at 724; whether the court is able to adequately discern the issues presented, Kirksey, 613 So.2d at 353; and the emphasis placed by the Rules of Appellate Procedure on reaching the merits of our cases. McDonald, 57 Ala.App. at 289, 328 So.2d at 295.”
Dubose v. Dubose, 964 So.2d 42, 46 n. 5 (Ala.Civ.App.2007)(final emphasis added). In this case, not only are we able to ascertain the issue, but, in its brief, the State addressed whether Okafor was entitled to receive Miranda warnings under the circumstances of this case. Additionally, the issues Okafor attempts to raise in this appeal, no matter how awkwardly expressed, concern the essence of the protections guaranteed by both the United States and Alabama constitutions and whether those protections were observed in this case. In light of these considerations, we address this issue on the merits despite the deficiencies of Okafor’s brief.
“The Miranda rights are based upon the Fifth Amendment guarantee that ‘[n]o person ... shall be compelled in any criminal case to be a witness against himself.’” Ex parte Woods, 592 So.2d 636, 637 (Ala.1991). This court has held that,
“[t]o obtain forfeiture, the state must establish a prima facie case by presenting evidence that creates a reasonable satisfaction that the property at issue is subject to forfeiture. Agee v. State ex. rel Galanos, 627 So.2d 960, 962 (Ala.Civ. App.1993). A forfeiture of property cannot be properly based on evidence obtained in violation of fundamental constitutional rights. Nicaud v. State, 401 So.2d 43 (Ala.1981). Thus, evidence obtained by an illegal search and seizure must be excluded in a forfeiture proceeding. $4,320.00 U.S. Currency v. State, 567 So.2d 352 (Ala.Civ.App.1990).”
Williams v. State, 674 So.2d 591, 593 (Ala. Civ.App.1995).
The State does not contest that caselaw holding that illegally obtained evidence cannot be used in criminal prosecutions also applies to civil-forfeiture proceedings. The Court of Criminal Appeals has explained the circumstances under which law-enforcement officials are required to give Miranda warnings.
‘“To decide if a suspect is in custody [for purposes of triggering a Miranda warning], the court, looking at the totality of the circumstances, must find that a reasonable person in the suspect’s position would believe that he or she is not free to leave.’ Seagroves v. State, 726 So.2d 738, 742 (Ala.Crim.App.1998).”
Woolf v. State, 220 So.3d 338, 349 (Ala. Crim.App.2014).
“ ‘ “In deciding whether the questioning of a suspect is ‘custodial’ the following factors should be considered:
“ ‘ “ “whether the suspect was questioned in familiar or neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint of the suspect, the duration and character of the questioning, how the suspect got to the place of questioning, the language used to summon the suspect, the extent to which the suspect is confronted with evidence of guilt, and the degree of *83 pressure applied to detain the suspect.” ’
“ ‘[Landreth v. State,] 600 So.2d [440] at 444 [ (Ala.Crim.App.1992) ], quoting P.S. v. State. 565 So.2d 1209, 1214 (Ala.Cr.App.1990).’
“Johnson v. State, 673 So.2d 796[, 798] (Ala.Cr.App.1995).”
State v. Jude, 686 So.2d 528, 533 (Ala. Crim.App.1996).
In opposing the State’s motion for a summary judgment, Okafor submitted Hereford’s affidavit, in which she stated that four law-enforcement officers entered the house “[w]ith loud voices, yelling, carrying weapons and using physical force.... ” It is undisputed that the law-enforcement officers entered the house without a warrant. Hereford also stated that the law-enforcement officers told her they were not going to leave the residence until they searched it and that the officers had constrained her freedom and that of Okafor “at the time they asked us questions.”
Based on the testimony presented in Hereford’s affidavit, we conclude that Oka-for presented sufficient evidence to create a genuine issue of material fact regarding whether he could have reasonably believed that he was in “custody” at the time he was questioned about the presence of marijuana in the house and whether his Fifth Amendment right against self-incrimination was violated. If the trial court resolves that factual issue in Okafor’s favor, then the condemnation and forfeiture of the currency cannot properly be based on the evidence seized during the warrantless search of the house. Williams, 674 So.2d at 593.
Because Okafor presented sufficient evidence to overcome the State’s summary-judgment motion, the trial court erred in entering a summary judgment in favor of the State. Accordingly, that judgment is due to be reversed. In reaching this conclusion, this court does not express an opinion as to whether Okafor will ultimately prevail. Instead, our holding is to be read only as a determination that genuine issues of material fact exist so as to preclude the entry of a judgment in favor of the State at this point in the proceedings.
For the reason set forth above, we reverse the judgment and remand the .cause to the trial court for further proceedings. We also pretermit discussion of the other grounds on which Okafor sought to have the judgment reversed.
REVERSED AND REMANDED.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
DONALDSON, J., concurs in part and dissents in part in the rationale and dissents from the judgment, with writing, which PITTMAN, J., joins.

. Neither party moved to strike any materials filed in connection with the motion for a summary judgment.

. We note that, as of the date of publication of this opinion, the Administrative Office of Courts has made the notice-of-appeal and the docketing-statement forms available for download in electronic portable-document format at the following web address: http:// eforms,alacourt.gov.